Whyte, J.
The errors assigned are, in the charge of the court, in stating to the jury what consiitutes a lawful fence. In the present case the act of Assembly has stated this, and it cannot be varied from, altered or in any manner changed by the statement of a court. The contrary to this position, would be to legislate, to impose on the case a substitute for the statute itself, a power not delegated to a court, and an assumption beyond its province. The act says, “every planter shall make a sufficient fence about his cleared land in cultivation', at least five feet high; the substitute made by the statement of the court in its charge, is a fence, on an average, five feet high. What is to be understood on an average applied in this statement of the charge? Is it that the aggregate of the height of each pannel of the fence, when divided by the number of pannels contained therein; shall produce the result of five feet? This is not the letter of the statute, nor can it be its meaning. There is no ambiguity in the expression, “a fence at least five feet high;” it means that the fence should be of that height throughout; the words “at least, ” are emphatical, and expressive of its minimum, and is applied to it as a whole, and to every part. But to what would such a relaxed construction of the statute as the charge gives lead to, if deficiences of one, two, or three inches in places or parts of the fence, are not to be considered as deviations from the statute? Another *39 court on the principle of averaging, m its discretion and judgment, may think double, or treble, or quadruple even of these partial deficits, a right construction, and where will it end? The principle of average will support the departure from the statute, and may be carried to a considerable extent; the sure consequence of which will be to divest, in a great degree, the-statute of its utilityr and obstruct its policy by lessening its beneficial influence on society, and prostrating its great object, as declared by its preamble, “the peace and harmony of neighborhoods,” I am'of opinion, therefore, that the verdict and judgment of the circuit court should be set aside, and a new trial had therein.
Catron, Ch. J.
delivered the opinion of himself and Green, J. It will be remarked, (without giving any opinion on the matter examined by Judge Whyte,) that the fence may have been a lawful fence opposite the oat patch, but a few rods further on, and opposite the cotton patch, it-was only three and a. half feet high. And the cross fence between the cotton and oats, 'down to the ground, was useless. This amounted to no fence recognized by law or good husbandry.
It is proved the mules were always seen to jump over the fence opposite the oat patch, and that they ranged on it from the time it was put into the ground.
The legislature intended that all parts of the enclosure of the field trespassed upon, should be at least five feet high. And why? Because, when stock once break good pasturage by reason of a fence 3 1-2 feet high, thq‘ temptation causes them to disregard the lawful part of the fence, and ruins their habits. To prove they were seen to get over the fence where it was five feet high) does not prove but that they were first tempted to tres| pass by getting into the enclosure where there was no ob| struction; for so, an old and rotten fence three and a half^ feet high, must be deemed by every farmer, who honestly,. *40 expects to guard against obstructions by his neighbor’s horses and mules. When, where and how -the mules trespassed, is not the question mainly presented; it is, had the plaintiff his field enclosed by a fence at least 'five feet high? This is not pretended, and it is expressly proved that, on two sides, there was no fence at all, to wit, next the cotton patch, and on the- opposite side of the plantation next to the string of fence referred to. This may be a hard case; but renters, as others, must see they have their fields lawfully fenced; and 'if they are not, either not rent, or contract for the making of fences.
We think that part of the charge which says, “that the fence on other parts of the farm being not such as tire law requires, would be no excuse for the defendant, unless the mules had gone into plaintiff’s oats in that direction,” is clearly erroneous. The jury were not permitted to look to any part of the fence about the field but the line on one side.
Judgment reversed.