PAUL DANIEL BURGIN, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

400 S.W.2d 539.

(*Knoxville,* September Term, 1965.)

Opinion filed March 9, 1966.

Hugh S. Guthrie, Knoxville, for plaintiff in error.

George F. McCanless, Attorney General, and Edgar P. Calhoun, Assistant Attorney General, for defendant in error.

Mr. Justice Creson delivered the opinion of the Court.

Plaintiff in error and the defendant in error will hereinafter be referred to as the defendant and the State, respectively. Defendant was convicted of armed robbery and sentenced to 60 years imprisonment by the Criminal Court of Knox County, Tennessee. Indictment was had on February 3, 1960, in two counts (1) for simple robbery, and (2) for robbery accomplished by the use of a deadly weapon. The indictment charged that such robbery was perpetrated against one Robert Harrell, an employee of Direct Oil Company. The pertinent statute, contained in T.C.A. sec. 39-3901, is as follows:

"39-3901. Robbery—Penalty.—Robbery is the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting

the person in fear. Every person convicted of the crime of robbery shall be imprisoned in the penitentiary not less than five (5) nor more than fifteen (15) years; provided, that if the robbery be accomplished by the use of a deadly weapon the punishment shall be death by electrocution, or the jury may commute the punishment to imprisonment for life or for any period of time not less than ten (10) years. (Code 1858, secs. 4631, 4632 (deriv. Acts 1829, ch. 23, sec. 20) ; Shan. secs. 6472, 6473; Code 1932, secs. 10802, 10803; Acts 1953, ch. 66, sec. 1; 1955, ch. 72, sec. 1.)''

The defendant was originally convicted of the crime of armed robbery in the Criminal Court of Knox County, on or about May 17, 1960, upon plea of guilty; and was sentenced to life imprisonment in the State penitentiary. This conviction was subsequently found to be void in a habeas corpus proceeding in the United States District Court for the Middle District of Tennessee, Nashville Division, by order entered on September 1, 1964. The Federal Court held that the Knox County Criminal Court lacked jurisdiction, consistent with due process of law, to accept petitioner's plea of guilty without first judicially determining the question of insanity. Insanity had been raised by the defendant.

After the Federal Court proceeding, the defendant was returned to Knox County for retrial. Prior to retrial, he was committed to Central State Hospital for mental examination; and, upon examination, was found to be mentally competent.

The defendant was retried in the Knox County Criminal Court on February 11, 1965, this time upon a plea of not guilty. On this retrial, the jury found the defendant guilty of armed robbery and, as said before, fixed

his punishment at 60 years in the State penitentiary. The trial judge entered judgment in accordance with this verdict. A motion for new trial was filed and overruled; and appeal has been duly perfected to this Court.

A narrative bill of exceptions filed in this record reveals that the defendant's conviction grew out of the robbery of the aforementioned Mr. Harrell, at about 12:30 A.M., December 12, 1960. At that time, Mr. Harrell was working as an attendant of the Direct Oil Company's service station located at the corner of Magnolia Avenue and Jessamine Street, Knoxville, Tennessee. The narrative shows that Mr. Harrell was sitting in the station office when a man, identified by Mr. Harrell as the defendant, walked in and asked where the men's room was. What took place thereafter is reflected in the following quote from the narrative bill of exceptions, summarizing the testimony of Mr. Harrell:

"In a few minutes man walked back in office. Had hand in his jacket and he told me to go in rest room or he would blow my head off. I went in, man walking behind me. When we got in rest room he told me to give him the bills, his hand was still in his jacket. I gave him all bills, then he demanded money changer. About this time he slapped me with his hand, keeping other hand in jacket pocket. When I handed him money changer, he stuffed it in his bosom. Then, without saying anything else, he cut me with some sharp instrument. I don't know whether it was a knife or razor— I didn't see it. He cut me on the left side of neck and face and he left. I fell to floor, addled but not unconscious, bleeding."

The bill of exceptions also contains the testimony of one John Ogan. He states that he took the defendant to

the service station which was robbed. He further says that after the robbery the defendant, while in the Ogan car, split the proceeds of the robbery with Ogan and one Ralph Atkins. Thereafter, the defendant threw the money changer and knife used in the robbery out of the window of the car, into the Tennessee River.

The defendant's Assignments of Error are as follows:

"1. The jury returned a verdict finding the defendant guilty of armed robbery, when there was no proof sufficient to constitute such offense.

2. The Honorable Trial Judge erred in charging and instructing the jury on armed robbery with a deadly weapon, as there was no proof introduced to constitute such offense."

■■ The essence of the contention of the defendant, under the foregoing Assignments of Error, is that his use of the deadly weapon, a knife, occurred after the completion of the robbery. Stated otherwise, the gist of the defense is that the deadly weapon was not disclosed but only simulated, to Harrell, prior to the defendant's gaining possession of the bills and the money changer. Defendant then concludes that he could not be found guilty of more than simple robbery. This Court has heretofore recognized that the 1955 Amendment as to robbery accomplished by the use of a deadly weapon is highly penal and is subject to the rule of strict construction. *Cooper v. State* (1956), 201 Tenn. 149, 297 S.W.2d 75, 61 A.L.R.2d 993. However, this Court is also cognizant of the intention of the Legislature in enacting the 1955 Amendment so as to provide for punishment by death, imprisonment for life, or for any period of time not less than ten (10) years, for robbery accomplished by the use

of a deadly weapon. This purpose was to prevent the kind and character of violence which often attends the use of a deadly weapon in the perpetration of a robbery. It is just this sort of violence which is found in the present case.

 This Court feels that it would be a most unreasonable construction and application of this statute to say it means that where a robbery is committed with a deadly weapon in the possession of the robber, throughout the robbery, as is clear in this case, but the deadly weapon is only simulated and not openly revealed or used until the robber has assumed possession of the fruits of his crime—then, the provisions concerning robbery accomplished by the use of a deadly weapon do not apply. Here, the deadly weapon was both in the possession of the robber throughout the crime and was, in fact, used by him; and was used to make secure his possession of that which he had forcibly taken.

It is quite pertinent at this point to note an able summary of the reported decisions in this connection, to be found in 77 C.J.S. Robbery sec. 25, p. 464, et seq., as follows:

"Under some statutes, robbery by one armed with a dangerous and deadly weapon is first degree robbery. The word 'armed,' as used in statutes of this nature, means furnished or equipped, and the actual display or use of the weapon is unnecessary, since it is the possible use to which the weapon might have been put that controls. Further, the robber need not be armed at all times during the robbery in order to be guilty of robbery in the first degree; he is guilty of robbery in the first degree if he arms himself or becomes armed with a deadly weapon at any time during the progress

of the taking or while the robbery is being perpetrated, and in this connection the crime of robbery is not completed the moment the stolen property is in the possession of the robbers, but may be deemed to continue during their attempt to escape.''

It is further helpful to note the text appearing in 77 C.J.S. Robbery sec. 11, p. 457:

''The force or intimidation essential to robbery need not precede the taking of the property. However, it must either precede or be contemporaneous with such taking, in the sense that the force or intimidation must be concurrent or concomitant with the taking. * * * In order to constitute robbery, the force or fear may and must be employed either to obtain or retain possession of the property or to prevent or overcome resistance to the taking. * * *.

Although there is a measurable period of time between the taking and subsequent force, if the latter occurs so soon after the former as to be part of the same transaction the violence is legally concomitant with the taking.''

We do not find anything in the Tennessee cases on the subject of robbery which tends to reject the rules as stated in the above quotations. Indeed, what has been said in the Tennessee cases tends in the same direction in which the above quotations enunciate the rules. None of the out-of-state authority cited by the earnest and able counsel for the defendant before this Court can be accurately said to stand for the proposition that before defendant here can rightly be convicted of robbery accomplished by the use of a deadly weapon, he must have disclosed and/or made open use of the deadly weapon in

his possession at or before the time of his gaining possession of the fruits of his crime.

It is necessary to, and we do hereby, affirm the judgment of the Court below, at cost of defendant.

BURNETT, CHIEF JUSTICE, and WHITE, DYER, and CHATTIN, JUSTICES, concur.